UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CHRISTOPHER O.,[1]<br><br>    Plaintiff,<br><br>  v.<br><br>SSA (INTERESTED PARTY / NEF), et al.,<br><br>    Defendants. | Case No.  25-cv-04507-AGT<br><br>**ORDER RESOLVING CLAIM FOR REVIEW UNDER 42 U.S.C. § 405(g)**<br><br>Re: Dkt. Nos. 8, 9 |

Plaintiff Christopher O. (Plaintiff) moves for reversal and remand of the decision of the Commissioner of Social Security (Defendant) denying Plaintiff's claim for disability benefits. Dkt. 8. Defendant moves to affirm the administrative law judge's (ALJ) decision. Dkt. 9. For the following reasons, the Court reverses Defendant's decision and remands for further consideration.

Plaintiff raises three issues on appeal: (i) whether the ALJ's findings as to Plaintiff's credibility (and that of his spouse) are supported by the record; (ii) whether the ALJ properly considered paragraph C criteria; and (iii) whether the ALJ failed to sufficiently include a persuasive medical opinion in the RFC finding. Dkt. 8.

/ / /

---

[1] The plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

### 1.    The ALJ's credibility findings are not supported by the record.

First, Plaintiff argues that the ALJ erred in discrediting the testimony of Plaintiff's spouse. Dkts. 8 (opening brief) & 12 (reply). Defendant doesn't respond regarding the testimony of Plaintiff's spouse in opposition, *see* dkt. 9, thereby conceding the issue. Moreover, as noted below, the ALJ's decision regarding this testimony was not supported by substantial evidence.

Next, Plaintiff argues that the ALJ erred in setting aside his testimony. In doing so, the ALJ noted a lack of consistency with the medical evidence, including a lack of evidence during the relevant time period; an inconsistency with a conservative course of treatment; and minimal treatment from March 2011 to June 2013. AR 27–28.[2]

Regarding treatment during the period at issue (January 1, 2013, to June 30, 2013, the onset date to the date of last time insured, AR 22), the ALJ found "no treatment, mental health or otherwise." AR 27. *See also* AR 28 ("there is no medical evidence from the relevant time period from the alleged onset date through the date last insured"). The ALJ noted that Plaintiff was taking Prozac during the relevant time period, but "it was not prescribed by a treating provider." AR 27.

Plaintiff argues that both findings are incorrect. Dkt. 8 at 16–17.[3] He was taking Prozac as prescribed from July 2012 to August 2013, a period which includes the entire period at issue. *Id.* Defendant responds that he may have received refills, but did not seek other treatment, make complaints, or receive clinical findings during the period at issue. Dkt. 9 at

---

[2] Citations to the Administrative Record (AR) correspond to the page numbers at the bottom right of each page.
[3] Citations to the docket here include references to the Electronic Case Filing numbers at the top of each page.

4. Defendant ignores Plaintiff's argument regarding whether the Prozac was prescribed, so Plaintiff argues that Defendant concedes the point. Dkt. 12 at 2–3.

On the Court's own review, Plaintiff received a Prozac prescription in July of 2012. AR 717–19. Plaintiff (or a family member) called his provider in August of 2012 and December of 2012 regarding refills on his Prozac prescription. *See* AR 717 & 714–15. Furthermore, there are notes from August of 2013 which indicate that Plaintiff started taking Prozac months prior. *See* AR 1992–94 (encounter on August 19, 2013, noting that Plaintiff started Prozac "7 m ago"); 1988–90 (different encounter on August 19, 2013, noting that "Patient states he has been taking prozac for almost a year"). Plaintiff then reported side effects from Prozac and so was prescribed Luvox instead in August of 2013, after the period at issue. *See* AR 703 & 1977–81.

Based on the above, the ALJ's conclusion that Plaintiff was not prescribed Prozac by a treating provider, AR 27, is not correct. *See* AR 717–19 ("Pt is agreeable to starting on prozac and also agreeable to seeing a counselor/therapist") & 1988–90 (Prozac prescribed by "PCP"). There is no chart record that Plaintiff met with a provider during the period at issue, but the analysis does not end here. There is evidence that he was taking Prozac, as prescribed, before and after the relatively small window of time from January to June 2013. Therefore, it is not correct to say (as the ALJ did) that Plaintiff was undergoing no mental health treatment during the time period at issue.

The ALJ also noted that Plaintiff engaged in a conservative course of treatment. AR 28. Given that, Plaintiff argues that the ALJ erred by failing to consider underlying reasons that Plaintiff did not seek further care. Dkt. 8 at 17–18. His failure to access care during the period at issue reflects his poor judgment and inability to manage care, not that his

limitations were less severe than alleged. *Id.* at 18.

Defendant responds that this argument is speculative, that there is nothing in the record showing that mental health symptoms inferred with Plaintiff's ability to receive care. Dkt. 9 at 4. But Plaintiff is documented to require a high level of support when engaging in care. *See, e.g.,* AR 715–16 (grandfather called regarding Prozac refill in December of 2012); 1983–84 (seen for mental health visit with fiancée in August of 2013); 1992–94 (seen for medical care with fiancée in August of 2013); 1956–57 (seen for mental health visit with fiancée in October of 2013); 1948–50 (grandmother provides Plaintiff with rides to appointments as of October of 2013); 689 (note regarding call from April 2014 that, "RN identified self as assisting Dr. Smith and was responding to his voice message to her yesterday and asked how she could be of assistance to him, he then requested RN hold for a minute and the phone was put down, RN thought perhaps he was going to a more private phone but then a female again picked up the phone but when RN again stated that the conversation needed to be directly with [Plaintiff] there was a muffled conversation and apparently pt was refusing to take the call and the phone was hung up"); 683 (seen for mental health visit with fiancée in May of 2014).[4]

Plaintiff's spouse testified that during the relevant period, she was taking care of him because he was "having a lot of problems taking care of himself." AR 56. He was not eating

---

[4] These records date from prior to and post the relevant time period. However, there is no indication that Plaintiff's condition changed, as Plaintiff argues. *See* dkt. 8 at 19. Defendant does not respond. Given this, it is reasonable to rely on such reports. *See Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) ("[A]lthough Niebaum's observations began three months after Diedrich's insured period ended, his observations are still relevant to show Diedrich's symptoms during that period. Absent a reason to think Diedrich experienced a major symptom change in the three months before she met Niebaum, it is a fair and reasonable inference that the symptoms Niebaum observed were substantially similar to the symptoms Diedrich experienced before June 30, 2008.").

or sleeping well, "[n]ot really doing basic life," and struggling to take medications or complete paperwork. *Id.* At work, Plaintiff "was constantly panicked, stressed, freaked out" and then "he would leave to try and get away from everything because he needed to take his medication." AR 57.[5]

In light of the above evidence and testimony, the ALJ should have and failed to "consider[ ] possible reasons [that Plaintiff] may not comply with treatment or seek treatment consistent with the degree of his . . . complaints." SSR 16-3p (2016). *See also Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("an adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering . . . other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment") (cleaned up).

Based on the above, the ALJ's decision to set aside testimony from Plaintiff is not supported by clear and convincing reasons.[6] *See Ahearn v. Saul*, 988 F.3d 1111, 1116 (9th Cir. 2021). Nor was the ALJ's decision regarding the testimony of Plaintiff's spouse supported by substantial evidence. The rejection of such evidence was legal error and thus provides grounds for remand of the ALJ's decision.

/ / /

/ / /

---

[5] The ALJ set aside testimony of Plaintiff's spouse as inconsistent with medical and other evidence, without further explanation. AR 28. For the reasons stated here regarding the ALJ's evaluation of the evidence, that conclusion is not supported by substantial evidence.

[6] Plaintiff additionally argues that the ALJ's reasons for setting aside his specific statements regarding panic attacks and the need for him to be supervised were not convincing. Dkt. 8 at 19–20. Defendant doesn't make responsive arguments in opposition and thereby concedes these points.

**2.    The ALJ failed to sufficiently include a persuasive medical opinion in the RFC finding.**

Dr. Maria Antoinette Acenas, a consultative psychological examiner, found Plaintiff to be moderately impaired in (1) ability to relate to others, coworkers, supervisors and the general public in an appropriate manner; (2) ability to maintain appropriate level of concentration, pace, persistence necessary to perform a one or two step simple task; (3) ability to maintain adequate persistence to perform complex tasks; (4) ability to tolerate the usual stress and pressures associated with day-to-day activity; and (5) ability to manage changes in a routine work situation. AR 359–60.

The ALJ found Dr. Acenas's opinion to be "most persuasive" and noted that she "relied on it." AR 29. The ALJ only included two limitations in the RFC, namely that Plaintiff "could carry out simple instructions, and occasionally interact with coworkers, supervisors, and the general public." AR 26.[7]

Plaintiff argues that the RFC fails to include limitations on Plaintiff's impairment in performing simple tasks, tolerating stress or pressures, and managing changes in a routine work setting. Dkt. 8 at 24–25. This was error, according to Plaintiff, because hypotheticals posed to a vocational expert must include all applicable limations. *Id.*

Defendant responds that the RFC finding is consistent with Dr. Acenas's assessment. Dkt. 9 at 7–9. Specifically, Defendant argues that an ALJ is permitted to translate and incorporate assessments into the RFC. *Id.* Defendant then argues that because Dr. Acenas didn't provide more specifics regarding her use of the term "moderate," the ALJ was free to use

---

[7] The ALJ also wrote that Dr. Acenas's opinion was more limiting than warranted by the medical evidence from the time period, but didn't elaborate more or explain how that impacted the RFC. AR 29. And, again, she expressly relied on this opinion. *Id.*

the agency definition. *Id.*

The problem with the agency's position is that the gravamen of Plaintiff's argument is not directed to the word "moderate." And just because an ALJ may interpret a physician's assessment doesn't mean that the ALJ can omit otherwise persuasive findings without explanation. Here, notably, the ALJ failed to incorporate any limitations on Plaintiff's ability to tolerate the usual stress and pressures associated with day-to-day activity or ability to manage changes in a routine work situation.

Furthermore, while an ALJ's RFC finding need not be identical to credible medical opinions, it needs to be consistent with them. *See Stubbs-Danielson v. Astrue,* 539 F.3d 1169, 1174 (9th Cir. 2008). A limitation of occasionally interacting with colleagues and the general public is not consistent with Dr. Acenas's finding that Plaintiff was moderately limited in his "ability to relate to others, coworkers, supervisors and the general public in an appropriate manner." AR 360. "Occasionally is a functional limitation defined as involving 'time' because it relates to how frequently or often the action or interaction occurs." *Tahni K. v. Comm'r of Soc. Sec.*, No. 23-cv-5761, 2024 WL 49694, at *2–3 (W.D. Wash. Jan. 4, 2024). Dr. Acenas's finding that Plaintiff had a moderate impairment in relating to others appears to be a qualitative assessment, not a quantity assessment.

Defendant next argues that any error was harmless because Dr. Acenas evaluated Plaintiff several years after the period at issue. Dkt. 9 at 9. That timing matters, according to Defendant, because if a belated opinion is not retrospective, then it is not persuasive regarding a claimant's disability during the earlier period at issue. *Id.*

As Plaintiff responds in reply, dkt. 12 at 11, this court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Rounds v.*

7

*Commissioner Social Sec. Admin.*, 807 F.3d 996, 1004 (9th Cir. 2015) (cleaned up). The ALJ's decision did not consider whether Dr. Acenas's opinion was retrospective. Indeed, the ALJ considered the timing of the assessment and wrote that, "I give the claimant great benefit of the doubt in applying these limitations back to the relevant time period." AR 30. In light of this, Defendant's argument regarding retrospectivity is without merit.

The ALJ failed to include all of the limitations stated in Dr. Acenas's assessment in the RFC, despite purportedly relying on it. *See* AR 29. This was not harmless error as an RFC must include all applicable limitations. *See Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, must set out all the limitations and restrictions of the particular claimant. Thus, an RFC that fails to take into account a claimant's limitations is defective.") (cleaned up).

### 3. **Remand Is Appropriate.**

Remand is warranted because the ALJ's errors may have been "[ ]consequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting another source), *superseded on other grounds by regulation*. The Court therefore declines to consider Plaintiff's alternative arguments for remand. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012).

/ / /

/ / /

/ / /

/ / /

/ / /

Conflicts and ambiguities exist in the record, so the case is remanded for further proceedings, not for payment of benefits. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

**IT IS SO ORDERED.**

Dated: June 11, 2026

Alex G. Tse
United States Magistrate Judge

9